**Eddie FITZPATRICK, Jr., Plaintiff,**

v.

**MORGAN SOUTHERN,
INC., Defendant.**

**No. 02–2090 Ml/Bre.**

United States District Court,
W.D. Tennessee,
Western Division.

April 21, 2003.

James N. Clay, III, Law Offices of James N. Clay, Memphis, TN, Paul O. Taylor, Truckers Justice Center, Eagan, MN, for Eddie Fitzpatrick, Jr.

Justin M. Ross, Curt Reid Soefker, Martin, Tate, Morrow & Marston, Memphis, TN, Bruce E. Mitchell, Mitchell & Associates, Atlanta, GA, for Morgan Southern, Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION

MCCALLA, District Judge.

Before the Court is Defendant's Motion for Reconsideration of Court's Order Denying Defendant's Motion to Dismiss and/or for Summary Judgment, filed February 12, 2003. Defendant asserts that no private right of action for damages exists for violations of 49 U.S.C. § 14704(a)(2), and, even if Congress did create a private right of action, Plaintiff's claims are barred by the two-year statute of limitations contained in 49 U.S.C. § 14705(c). Plaintiff responded in opposition on February 24, 2003. For the following reasons, the Court GRANTS Defendant's motion for reconsideration.

## I. Background

This case concerns a truck lease between Plaintiff and Defendant. Plaintiff asserts that the parties' contract does not comply with the Federal Highway Administration's Truth–in–Leasing Regulations, 49 C.F.R. §§ 376.11, 376.12. Plaintiff's statutory claim for damages under 49 U.S.C. § 14704(a) asserts that Defendant violated these regulations by failing to pay interest on Plaintiff's escrow account, failing to pay Plaintiff his full percentage as specified in the lease, failing to pay Plaintiff the compensation specified in the lease, failing to provide Plaintiff with copies of documents, failing to permit Plaintiff the

opportunity to examine certain documents, and failing to account for and document certain charge-backs. Additionally, Plaintiff claims that Defendant breached the parties' lease agreement in violation of Georgia law.

Both parties agree that Plaintiff leased two trucks to Defendant in July of 1991. Plaintiff subsequently terminated the lease on one of the trucks in January 1993 and terminated the lease on the second truck in June 1993. In March 1997, the parties entered into a new lease agreement and Plaintiff began to work as an owner operator with Defendant. On September 20, 1999, Plaintiff terminated this second lease agreement. Plaintiff filed suit against Defendant on February 13, 2002.

In Defendant's original motion, Defendant asserted that Plaintiff's claims for violations of the Truth–in–Leasing Regulations were barred by the statutes of limitations contained in 49 U.S.C. §§ 14705(b), (c), or (d). Defendant noted in a footnote, but did not specifically argue, that one court has held no private right of·action for damages even exists for violations of 49 U.S.C. § 14704(a)(2). The Court believed Defendant conceded the existence of a private right of action for damages under § 14704(a)(2) and held that 28 U.S.C. § 1658(a) established a four-year statute of limitations for this cause of action. Therefore, with respect to Plaintiff's claims arising under § 14704(a) the Court granted Defendant's motion to dismiss as to claims arising before February 13, 1998 and denied Defendant's motion as to claims arising after February 13, 1998.

Defendant filed this motion for reconsideration requesting that the Court specifically address whether a private right of action for damages exists under § 14704(a)(2). Defendant argues that Congress did not establish a private right of action for damages and, therefore, Plaintiff should have sought an injunction compelling the Secretary of Transportation to initiate proceedings against Defendant or brought a state law breach of contract action (as Plaintiff did in Count Two of the Complaint). In the event the Court finds such a cause of action exists, Defendant also newly argues that, due to a scrivener's error, the provision in question was inadvertently enacted as § 14704(a)(2) when it should have been enacted as part of § 14704(b), to which a two-year statute of limitations is applicable under § 14705(c). Using this two-year statute of limitations, Defendant argues that Plaintiff's claims in Count One are time-barred.

Plaintiff asserts, as it did in the December 26, 2002 response to the motion to dismiss, that § 14704(a)(2) provides for a private right of action for damages and that the applicable statute of limitations period is four years pursuant to 28 U.S.C. § 1658(a).

## II. Private Right of action

49 U.S.C. § 14704 provides:

(a) **In general.—**

(1) **Enforcement of order.—**A person injured because a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 does not obey an order of the Secretary or the Board, as applicable, under this part, except an order for the payment of money, may bring a civil action to enforce that order under this subsection. A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.

(2) **Damages for violations.—**A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

■ Despite the fact that subsection (a)(2) does not contain the magic language "a person may bring a civil action", the Court defers to the Eighth Circuit's well-reasoned decision in *Owner–Operator Indep. Drivers Assoc., Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir.1999), which held that a plaintiff may bring a private right of action for damages under § 14704(a)(2).[1]

In *New Prime*, the Eighth Circuit held that § 14704(a)(2) creates a private right of action for damages for violations of the Truth–in–Leasing Regulations. In arriving at this decision, the Court relied upon the legislative history of the Interstate Commerce Commission Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995) (the "ICCTA"). The House Report states in part:

> The bill transfers responsibility for all the areas in which the ICC resolves disputes to the Secretary [of Transportation] (except passenger intercarrier disputes). *The Committee does not believe that DOT should allocate scarce resources to resolving these essentially private disputes, and specifically directs that DOT should not continue the dispute resolution function in these areas. The bill provides that private parties may bring actions in court to enforce the provisions of the Motor Carrier Act.* This change will permit private, commercial disputes to be resolved the way that all other commercial disputes are resolved—by the parties.

*New Prime*, 192 F.3d at 781, quoting H.R.Rep. No. 104–311, at 87–88 (1995), reprinted in 1995–2 U.S.C.C.A.N. 793, 799–800 (emphasis in Eighth Circuit opinion). The Eighth Circuit also noted that "the Committee described § 14704 of the House Bill as 'providing for the private enforcement of the provisions of the Motor Carrier Act in court. This expands the current law which only permits complaints brought under the Act to be brought before the ICC.'" *New Prime*, 192 F.3d at 781, quoting H.R.Rep. No. 104–311, at 120–121 (1995), reprinted in 1995–2 U.S.C.C.A.N. 850, 906–907.

Moreover, the Federal Highway Administration, the entity which administers the Truth–in–Leasing Regulations between motor carriers and owner-operators of

---

1. The Court acknowledges Defendant's citation to a case holding that § 14704(a)(2) does not provide a private right of action for damages. *See Renteria v. K & R Transp., Inc.*, 1999 WL 33268638, 1999 U.S. Dist. Lexis 22620 (C.D.Cal. February 25, 1999). However, in *Renteria*, which was decided before *New Prime*, the district court relied heavily upon a prior case interpreting similar provisions governing rail carriers. *Id.*, 1999 WL 33268638 at *4–*5, 1999 U.S. Dist. Lexis 22620 at *13 (citing *DeBruce Grain, Inc. v. Union Pac. R.R. Co.*, 983 F.Supp. 1280 (W.D.Mo.1997)). The court followed *DeBruce* and noted that the lack of a limitations period for a civil action for damages suggests Congress did not intend to permit such actions for violations of Truth–in–Leasing Regulations. *Renteria*, 1999 WL 33268638 at *4–*5, 1999 U.S. Dist. Lexis 22620 at *13–*14.

The Court realizes that *Renteria* proposes a plausible interpretation of this inartfully drafted provision. However, given that Congress has enacted 28 U.S.C. § 1658(a), which provides for a four-year statute of limitations when Congress has not specified a limitations period, this Court is not inclined to afford such great weight to the absence of a statute of limitations.

Furthermore, while *Renteria* relied on *DeBruce's* interpretation of the parallel provisions concerning rail carriers, at least two subsequent cases have taken the opposite view that the parallel provisions regarding rail carriers do, indeed, provide a private cause of action for damages. *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195 (1st Cir.2000) (discussing 49 U.S.C. §§ 11704(b), (c)(1)); *Engelhard Corp. v. Springfield Terminal Ry., Co.*, 193 F.Supp.2d 385, 390 (D.Mass.2002) (discussing 49 U.S.C. §§ 11704(b), (c)(1)). These cases will be discussed further in Section III.A. of this order.

truck tractors, refused to hear the plaintiffs' collateral action for declaratory relief related to the *New Prime* litigation. Petition for Declaratory Order Regarding Application of Federal Motor Carrier Truth In–Leasing Regulations, 63 Fed.Reg. 31827 (June 10, 1998). The Federal Highway Administration stated that the ICCTA "expanded the rights and remedies of persons injured by carriers by providing for private enforcement of its provisions in court." *Id.* at 31828; *see also Owner–Operator Indep. Drivers Assoc. v. Mayflower Transit, Inc.,* 161 F.Supp.2d 948, 954 (S.D.Ind.2001).

While the decision in *New Prime* is not binding on this Court, it is certainly persuasive. Furthermore, in a similar case regarding § 14704, *see Owner–Operator Indep. Drivers Assoc., Inc. v. Arctic Express, Inc.,* 87 F.Supp.2d 820 (S.D.Ohio 2000), the Sixth Circuit Court of Appeals originally transferred the appeal in the case to the Eighth Circuit to be consolidated with *New Prime.* Although the Eighth Circuit denied the petition for review of *Arctic Express,* the Sixth Circuit's action seems to evidence an intention to defer to the Eighth Circuit on this issue. Indeed, when *Arctic Express* returned to the Southern District of Ohio after the Eighth Circuit denied the petition for review, the district court relied entirely on *New Prime* in arriving at its decision to allow a private right of action for damages under § 14704(a)(2). *Arctic Express,* 87 F.Supp.2d at 824–826.

Finally, the Conference Report which accompanied the passage of § 14704 by both houses of Congress states, "The ability to seek injunctive relief for motor carrier leasing and lumping violations is in addition to and does not in any way preclude the right to bring civil actions for damages for such violations." H.R. Conf. Rep. No. 104–422, at 222 (1995), *reprinted in* 1995 U.S.C.C.A.N. 851, 907. As this statement shows, Congress clearly anticipated that parties would bring civil actions in court for leasing violations.

Accordingly, the Court holds that 49 U.S.C. § 14704(a)(2) provides Plaintiff a private right of action for damages.

## III. Statute of Limitations

In the original decision in this case, the Court held that in the absence of a specified limitations period, the statute of limitations for a claim under 49 U.S.C. § 14704(a)(2) is four years pursuant to 28 U.S.C. § 1658(a).

In its present motion for reconsideration, Defendant raises for the first time [2] a rather novel argument that the statute in question contains a scrivener's error and that 49 U.S.C. § 14704(a)(2) should have been enacted as part of 49 U.S.C. § 14704(b), to which a two-year statute of limitations applies pursuant to 49 U.S.C. § 14705(c).[3]

Neither the parties, nor the Court, has located a case discussing the statute of limitations for a § 14704(a)(2) claim for a

---

**2.** In contrast to its present argument, Defendant conceded in its original motion that " § 14705 … does not contain a period of limitations expressly applicable to the supposed private cause of action under 49 U.S.C. § 14704(a)(2)" and "None of these subsections [of § 14705], however, is expressly applicable to a private cause of action against a carrier for violations of the TLRs." (Mem. in Supp. of Def.'s Mot. to Dism. and/or for Summ. J. at 3.)

**3.** The text of 49 U.S.C. § 14705(c) is as follows:

  **(c) Damages.—**A person must file a complaint with the Board or Secretary, as applicable, to recover damages under section 14704(b) within 2 years after the claim accrues.

violation of the Truth–in–Leasing Regulations.[4]

Defendant asks the Court to recognize a scrivener's error and essentially redraft a statute enacted by Congress in order to reflect what Defendant believes is a simple error. This is no small request and this Court ordinarily would not attempt to revise the structure of a statute. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

However, the Supreme Court has also stated, "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enters.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotation marks and citations omitted). *See also Appalachian Power Co. v. EPA,* 249 F.3d 1032, 1041 (D.C.Cir.2001) (correcting internal cross-reference in the Clean Air Act due to a scrivener's error). "Statutory construction 'is a holistic endeavor,' and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." *United States Nat'l Bank of Or. v. Indep. Ins. Agents of America, Inc.,* 508 U.S. 439, 444, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (citation omitted) (correcting punctuation of a statute where the "best reading" of the statute recognizes that the placement of quotation marks "was a simple scrivener's error, a

mistake made by someone unfamiliar with the law's object and design").

■ This Court would not invoke a rule recognizing a scrivener's error to modify enacted statutory text absent an extraordinarily convincing justification. In this case, the Court believes such a justification exists. The Court bases its decision on several factors, which will be discussed in detail below. First, the legislative history of the ICCTA shows that the structure of §§ 14704 and 14705 is at odds with the purpose of the statute for several reasons. Second, the Surface Transportation Board, the agency charged with enforcement and regulatory responsibilities under the ICCTA, believes that the statute contains an error. Therefore, the Court finds that the statute contains an inadvertent mistake and the two-year statute of limitations contained in § 14705(c) applies to the private right of action under § 14704(a)(2).

**A. Legislative History**

Examination of whether 49 U.S.C. § 14704 contains an error requires a discussion of the legislative history and circumstances surrounding the passage of the statute. In 1995, Congress passed the Interstate Commerce Commission Termination Act, Pub.L. No. 104–88, 109 Stat. 803 (1995), which furthered the deregulation of the rail and motor carrier industries, abolished the Interstate Commerce Commission, and bestowed certain enforcement and regulatory authority upon the newly created Surface Transportation Board. *City of Laredo v. Texas Mexican Ry. Co.,* 935 F.Supp. 895, 897 (S.D.Tex. 1996) (citing H.R.Rep. No. 311, 104th Cong., 1st Sess. 82–83 (1995), reprinted in 1995 U.S.C.C.A.N. 793–94).

---

**4.** The district court in *Renteria v. K & R Transportation, Inc.,* 1999 WL 33268638, *5, 1999 U.S. Dist. Lexis 22620, *14 (C.D.Cal. Feb. 23, 1999), noted the absence of a statute of limitations applicable to 49 U.S.C. § 14704(a)(2) in its decision holding that no private right of action for damages exists for a violation of the provision.

Both the House of Representatives and Senate bills as originally drafted authorized a private cause of action under section § 14704(b)(2), which was subject to a two-year statute of limitations for actions pursuant to § 14705(c). H.R. 2539, 104th Cong. (1995); S. 1396, 104th Cong. (1995). Indeed, the statute of limitations provision contained in § 14705(c) of the original House of Representatives and Senate versions of the bill specifically referenced § 14704(b)(2). H.R. 2539 ("A person must file a complaint with the Panel or Secretary, as applicable, to recover damages under section 14704(b)(2) of this title within 2 years after the claim accrues.") (version dated October 27, 1995); S. 1396 ("A person must file a complaint with the Transportation Board or Secretary, as applicable, to recover damages under section 14704(b)(2) of this title within 2 years after the claim accrues.") (version dated November 6, 1995).

The House of Representatives amended its version of § 14704 after debate on the floor. The record of the debate in the House of Representatives indicates that the proposed amendment to § 14704, in which § 14704(b)(2) became the current § 14704(a)(2), was included along with a larger group of changes known as the Whitfield Amendment, which mainly dealt with railroad mergers and railroad employees. 141 Cong. Rec. H. 12248, 12253–12307 (Nov. 14, 1995). The Congressional Record does not indicate the reasons for the House of Representatives' amendment to § 14704, which appears to be purely technical in nature. Indeed, the amendment to § 14704 did not actually alter the text of the section, it merely moved one sentence to a new location.

A Conference Committee later met to discuss the differing House of Representatives and Senate bills and adopted the House of Representatives' version of § 14704. The Conference Committee issued a report that accompanied passage of the bill by both houses of Congress, H.R. Conf. Rep. No. 104–422, at 221–222 (1995), *reprinted in* 1995 U.S.C.C.A.N. 850, 906–907, and which provides powerful evidence of Congress' intentions in enacting the ICCTA. Norman J. Singer, *Statutes and Statutory Construction* §§ 48:06, 48:09 (6th ed. 2000) ("Since the conference report represents the final statement of terms agreed to by both houses of Congress, next to the statute itself, it is the most persuasive evidence of congressional intent.").

The Court finds the legislative history behind § 14704 indicative of a mistake for four reasons. First, in the Conference Report Congress specifically stated that it intended to preserve the relevant statute of limitations, which was two years under the former Interstate Commerce Act. Second, Congress specifically stated that it intended to make the limitations period uniform for all types of carriers. The statute of limitations for the parallel provisions governing rail and pipeline carriers is two years. Third, the related statute of limitations provision in § 14705(c) was not concurrently amended to reflect the House of Representatives' amendment to § 14704. Fourth, testimony given during debate on the Whitfield Amendment in the House of Representative indicates that it was introduced in haste and that the Congressmen did not have sufficient time to review the bill and the proposed amendments.

The Conference Report accompanying the passage of § 14705, which prescribes the relevant limitations periods for various actions under § 14704, by both houses of Congress states, "This section *preserves relevant statutes of limitations* for bringing court suits by or against carriers and *makes the time limitation uniform for all types of traffic.*" H.R. Conf. Rep. No.

104–422, at 222 (1995), *reprinted in* 1995 U.S.C.C.A.N. 851, 907. (emphasis added). This statement regarding the passage of § 14705 contains two significant comments.

First, the Conference Report states that the section "preserves relevant statutes of limitations." Prior to the passage of the ICCTA, the statute of limitations for a claim seeking damages against a common carrier under the Interstate Commerce Act was two years. 49 U.S.C. § 11706(c)(1) (1994); *see also* 49 U.S.C. § 11705(b)(2). In order to preserve the relevant statute of limitations, the Court should apply the two-year statute of limitations contained in § 14705(c) to this case.

Second, the Conference Report also states that the statute "makes the time limitation uniform for all types of traffic." The ICC Termination Act contains parallel provisions governing rail carriers and pipeline carriers. The relevant provisions governing rail carriers, §§ 11704(b) and (c)(1), have been held to permit private causes of actions for damages against rail carriers. *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195 (1st Cir.2000); *Engelhard Corp. v. Springfield Terminal Ry. Co.*, 193 F.Supp.2d 385, 390 (D.Mass.2002). Both of these cases discussed the applicable statute of limitations.

The Court in *Pejepscot* was not directly presented with the question of the applicable limitations period. However, the Court noted that it might apply either the four-year limitations period of 28 U.S.C. § 1658 or the two-year limitations period contained in § 11705(c), which applies to claims for damages filed with the Surface Transportation Board, to an action filed in federal court. *Pejepscot*, 215 F.3d at 202 n. 5. The Court in *Engelhard* directly addressed the question of the applicable limitations period. The Court stated that the two-year statute of limitations contained in § 11705(c) applies to § 11704(b) actions in federal court. *Engelhard*, 193 F.Supp.2d at 390.[5] The fact that the two-year statute of limitations has been applied to the parallel action for damages against rail carriers supports a finding that the two-year statute of limitations in § 14705(c) applies here because Congress specifically stated it intended to make the time limits uniform for all types of traffic.[6]

Furthermore, the Court can discern no reason why motor carriers should be treated differently from rail and pipeline carriers. Notably, at no time has Congress evidenced any intention to change the statute of limitations for motor carriers to make it different from the statute of limitations applicable to rail and pipeline carriers.

Adding further credence to the assertion that the statute contains a mistake is the fact that even after the Whitfield Amendment to the bill was adopted by the House of Representatives, in which § 14704(b)(2)

---

**5.** Both the *Pejepscot* and *Engelhard* courts noted that despite the language in § 14705(c) that refers to filing "a complaint with the Board or Secretary", the limitations period applies to civil actions in a district court as well. *Engelhard*, 193 F.Supp.2d 385, 390 (citing *Aluminum Ass'n, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 746 F.Supp. 207, 213 n. 18 (D.D.C.1990)); *Pejepscot*, 215 F.3d 195, 202 n. 5 (same).

The Court in *Engelhard* also noted that 28 U.S.C. § 1658, as discussed in *Pejepscot*, would not provide the applicable limitations period because it applied only to statutes *enacted* after December 1, 1990, and not to preexisting statutes *amended* after that date. *Engelhard*, 193 F.Supp.2d at 390 n. 10.

**6.** The Court has not located any cases discussing a private right of action for damages against a pipeline carrier under 49 U.S.C. § 15904(b)(2), or the statute of limitations contained in 49 U.S.C. § 15905(c). However, these parallel provisions governing pipelines should be interpreted in a similar fashion in order to achieve Congress' goal of uniformity.

was relocated to § 14704(a)(2), the statute of limitations provision in § 14705(c) still included a reference to the non-existent § 14704(b)(2). H.R. 2359 (version dated November 15, 1995). The Whitfield Amendment did not amend the limitations provision of § 14705(c). *Id.* The statute of limitations provision of § 14705(c) continued to contain a reference to the non-existent § 14704(b)(2) in later versions of the House of Representatives bill as well. H.R. 2359 (version dated November 30, 1995; version dated December 5, 1995). In the final version of the bill signed by the President, the reference in § 14705(c) to the non-existent § 14704(b)(2) had been eliminated such that § 14705(c) as enacted refers to § 14704(b) generally.

Although the Court typically presumes that when Congress adopts the amended version of a statute it does so deliberately, the Court can discern no logical reason why subsection (b)(2) became subsection (a)(2) without a concurrent amendment to the limitations provision in § 14705(c) [7], which contained a reference to § 14704(b)(2). Congress' failure to concurrently amend § 14705 to reflect a change in § 14704 supports the idea that a mistake was made along the way.[8]

Finally, it is also noteworthy that during the debate on the proposed bill at least one Congressman commented on the haste in which the bill was presented. "I need to express my dismay with the process and the haste with which this bill was brought before us. As a member of the Committee on Transportation and Infrastructure, we received a 280–page bill on Thursday night and were asked to review, evaluate, and vote on amendments in 4 days, 4 days to determine how we were going to restructure a body of law that had taken 100 years to develop." 141 Cong. Rec. H. 12248, 12259 (Nov. 14, 1995) (statement of Cong. Nadler). The lack of time members were given to review the bill and its amendments supports the proposition that the amendment to § 14704 without a concurrent amendment to § 14705(c) was an inadvertent mistake.

## B. Opinion of the Surface Transportation Board

The only precedent in support of the claim that the statute contains a scrivener's error comes from dicta in an order of the Surface Transportation Board. The order from the Surface Transportation Board considered the 180–day shipper notification provisions of 49 U.S.C. § 13710(b)(3)(B). The Surface Transportation Board stated in a lengthy footnote:

---

**7.** The election provision in § 14704(c)(1) also contained a reference to subsection (b)(2), however, subsection (c)(1) was amended concurrently to remove the reference to (b)(2).

**8.** Defendant's motion asks the Court to redraft the statute to return the language in § 14704(a)(2) to subsection (b)(2), which would undo the change effected by the Whitfield Amendment. This interpretation resolves several problems with this section of the ICCTA. Specifically, the damages provision makes sense in its original location because it mirrors the comparable provisions concerning rail carriers and pipelines, *see* 49 U.S.C. §§ 11704(b) (governing rail carriers), 15904(b) (governing pipeline carriers), more

clearly provides for a civil action in court, *see* 49 U.S.C. § 14704(c)(1), and also contains an applicable limitations period, *see* 49 U.S.C. § 14705(c).

While the Court believes there is a good deal of support for Defendant's argument to restructure the statute, it is a drastic change the Court is unwilling to make at this time because it is not necessary to the proper resolution of this case and is a task better left to Congress. The Court's decision in this case is limited to a finding that Congress inadvertently failed to amend the reference in § 14705(c) to § 14704(b)(2) in order to properly reflect the relocation of subsection (b)(2) to subsection (a)(2).

Although not directly at issue in this proceeding, we note an apparent technical error in the statute. Section 14704(c)(1) authorizes a person to "bring a civil action under subsection (b) [of section 14704] to enforce liability against a carrier or broker providing transportation subject to jurisdiction under chapter 135." As codified, subsection (b) refers only to tariff overcharges, while the provision allowing recovery of damages from carriers is contained in section 14704(a)(2) (as to which the statute does not expressly authorize a civil action). Both the House and Senate bills (H.R. 2539 and S. 1396) that became the ICC Termination Act of 1995, however, placed the damages provision in subsection (b)(2), as to which the statute does authorize a civil action. Subsection (b)(2), as passed by both Houses, reads as follows:

A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 of this title is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

Thus as enacted by Congress, section 14704(c)(1) authorized civil actions both for damages and for charges exceeding the tariff rate. Notwithstanding the fact that section 14704(b)(2) was misplaced [having been codified as section 14704(a)(2)], in our opinion, section 14704(c)(1) was intended to authorize a person to bring a civil action against a carrier or broker for damages sustained by that person as a result of any act or omission of the carrier in violation of Part B, Subchapter IV, if Title 49.

Nat'l Ass'n of Freight Transp. Consultants, Inc.—Petition for Declaratory Order, 61 Fed.Reg. 60140, 60141 n. 3 (Nov. 26, 1996). Although this statement is dicta and goes more to the question of whether Congress misplaced subsection (a)(2), it carries significant weight with the Court as the opinion of the agency charged with enforcement and regulatory authority under the ICCTA. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[The Supreme Court has] long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."); *see also Oakland County Bd. of Comm'rs v. U.S. Dep't of Labor*, 853 F.2d 439, 442 (6th Cir.1988) (same).

The Surface Transportation Board has indicated its belief that the statute contains a mistake and should be understood as authorizing a civil action pursuant to the original language of the House of Representatives and Senate bills. As previously stated in footnote 8, *supra*, this Court is not willing to restructure the statute so drastically. However, the Court heeds the Surface Transportation Board's belief that a mistake has occurred. In the absence of such a mistake, the two-year statute of limitations provided in § 14705(c) would clearly apply to the private right of action in § 14704. Therefore, in accordance with the Surface Transportation Board's opinion that the statute contains a mistake it is sensible for the Court to apply the two-year statute of limitations in § 14705(c) in this case.

## IV. Conclusion

The Court finds that Plaintiff may bring a private right of action for damages pursuant to 49 U.S.C. § 14704(a)(2) for violations of the Truth–in–Leasing Regulations. The Court further finds that the two-year statute of limitations provided in 49 U.S.C. § 14705(c) applies to the private right of action under § 14704(a)(2). Plaintiff's claims under § 14704(a)(2) arose at the latest in September 1999 when Plaintiff terminated the second lease agreement,

more than two years before he filed his Complaint. Therefore, they are barred by the statute of limitations. Accordingly, the Court DISMISSES the claims in Count One of Plaintiff's Complaint.