931 So.2d 377 (2006)
Donna ZERINGUE Wife of/and Ray Zeringue
v.
O'BRIEN TRANSPORT, INC., et al.
No. 05-CA-760.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2006.
*378 Erin P. Shea, Scott P. Shea, Metairie, Louisiana, for Plaintiff/Appellant.
George P. Hebbler, Jr., Pamela B. Gautier, Metairie, Louisiana, for Defendant/Appellee.
Steven M. Lozes, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Plaintiffs, Donna and Ray Zeringue, appeal a judgment that granted a defense motion for summary judgment. For reasons that follow, we affirm.
Plaintiff, Ray Zeringue, who is an employee of Quality Distribution, Inc. (Quality), was installing a satellite tracking system on a trailer attached to a hauling rig in the course and scope of his employment with Quality when he fell from the rig and was injured. He qualified for, and has received, workers' compensation benefits as a result of the accident.
Subsequently, Mr. Zeringue filed an action to recover damages against several defendants including O'Brien Transport, Inc. (O'Brien) owner of the trailer, and Jermaine Rouselle, d/b/a J.R. Trucking Company (Rouselle), the owner of the rig hauling the trailer. Henry Wolfe, an employee of Rouselle, whom plaintiff asserted was the driver of the truck at the time of the accident, was also named as a defendant.
*379 Defendant, Rouselle, filed a motion for summary judgment in which he maintains that the plaintiffs' suit is barred by the exclusivity of the Louisiana Workers' Compensation Law. In support of the motion, Rouselle asserts that he entered into a contract with Quality prior to the accident in which Quality leased Mr. Rouselle's truck with an agreement that Mr. Rouselle would operate the truck for Quality. Therefore, Mr. Rouselle is the statutory employee of Quality, and a co-worker of plaintiff, a fact which precludes plaintiffs' tort suit against him. Attached to the motion is an "independent contractor agreement" between Quality and Rouselle.[1]
In opposition to the motion, the plaintiffs concede that a valid contract existed between Quality and Rouselle. Further, plaintiffs admit that Quality is an authorized carrier, subjected to the provisions of 49 U.S.C. 13901 & 13902, 49 C.F.R. 376.2(a). However, plaintiffs argue the specific language of the lease agreement excludes Jermaine Rouselle from the classification of an employee of Quality by making him an independent contractor. Therefore, plaintiffs argue Mr. Rouselle and Mr. Zeringue are not co-workers.
After hearing on the matter, the trial court rendered judgment granting the defense motion for summary judgment, prompting this appeal. The transcript of the hearing shows that the trial court was persuaded by Rouselle's argument that the contract must be interpreted pursuant to controlling federal law.
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Summary judgments are now favored in the law and the rules should be liberally applied. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. La. C.C.P. art. 966; Mitchell v. Dillard Dept. Stores, Inc., 00-328 (La.App. 5 Cir. 10/18/00), 772 So.2d 733. Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Haley v. Roberts, 02-30 (La.App. 5 Cir. 5/29/02), 820 So.2d 1114, 1116. When the "dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law," the court must grant a motion for summary judgment. La.C.C.P. art. 966(B)
In the matter before us, the parties agree that a valid contract exists between Quality and Rouselle and that Quality is authorized carrier, subject to the provisions of 49 U.S.C. 13901 & 13902, 49 C.F.R. 376.2(a). It is also undisputed that leases between regulated carriers and owner-operators are subject to federal law. Turner v. Miller Transporters, Inc., 02-2278 (La.App. 1 Cir. 6/27/03), 852 So.2d 478, amended, 02-2278 (La. 1 Cir. 2/23/04), 876 So.2d 848, writ denied, 04-762 (La.5/21/04), 874 So.2d 174, writ denied, 04-804 (La.5/21/04), 874 So.2d 177.
Because the common practice of leasing equipment by a carrier operating in interstate commerce often led to abuses that presented a threat to the public and the trucking industry, Congress amended the Interstate Commerce Act, giving the ICC the power to regulate non-owned equipment *380 by interstate carriers. 49 U.S.C.A. § 304(e)(1956). As explained in White v. Excalibur Insurance Co., (5th Cir.1979), 599 F.2d 50, certiorari denied, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979).
Motor carriers had attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making them all nominally "independent contractors." See generally Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 1975, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169; American Trucking Associations, Inc. v. United States, 1953, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337; Alford v. Major, 7 Cir.1972, 470 F.2d 132. In order to be certain that the public would be protected from the torts of these frequently insolvent operators, Congress in 1956 adopted amendments to the Interstate Motor Common Carrier Act requiring a motor carrier to assume "full direction and control" of leased vehicles. Because the carrier now has both a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles. Simmons v. King, 5 Cir.1973, 478 F.2d 857, 867.
(Some citations and footnotes omitted)

Id. 599 F.2d at 52-53
49 C.F.R. § 376.12, which is applicable to the lease in question, provides in pertinent part:
(c) Exclusive possession and responsibilities.
(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
(2) Provision may be made in the lease for considering the authorized carrier lessee as the owner of the equipment for the purpose of subleasing it under these regulations to other authorized carriers during the lease.
The policy underlying the applicable federal law was to impose on lessee-carriers responsibility for the operation of leased vehicles. The lease between Rouselle and Quality reflects that policy. Clause 17 of the contract between the parties reads in pertinent part as follows;
CARRIER'S RESPONSIBILITIES
b.) Exclusive possession and Responsibility (49 CFR 376.12(c)): The Equipment shall be for CARRIER'S exclusive possession, control, and use for the duration of this Agreement. CARRIER shall assume completer responsibility for the operation of the Equipment, as required by the Federal Highway Administration. This subparagraph is set forth solely to conform with Federal Highway Administration regulations and shall not be used for any other purposes including any attempt to classify INDEPENDENT CONTRACTOR as an employee of CARRIER......
Because of the grant of the legal right and duty over leased vehicles to the carrier, the employees of the lessor/vehicle owners are deemed statutory employees of the lessee/carrier under federal law. White v. Excalibur Insurance Company, 599 F.2d 50, 52, and cases cited therein. As explained in White, 599 F.2d at 53;
The statutory employee status created by federal law may affect employer-employees relationships under otherwise controlling state statutes where direction *381 and control of the worker by the federally regulated employer are central to the regulatory program.
Thus, under the general rule of federal law, Rouselle is a statutory employee of Quality.
However, that fact does not end our inquiry. The analysis of law in White and related cases involves factual situations quite different from the one in the matter before this Court. In White, the plaintiff was killed in a collision while riding in a vehicle leased to an ICC carrier. Plaintiff and a fellow driver were taking turns driving, and when the accident occurred, plaintiff was asleep in the passenger seat. His mother filed suit for wrongful death. The White court ruled that she was barred from seeking any remedy against the carrier's insurer, except for workers' compensation. The court found that Mrs. White had no right of recovery in tort against the carrier under federal law because her son was not a member of the public for whom the statute was enacted. It concluded that fellow employees were outside the scope of the protection intended by the federal law. White, 599 F.2d at 52.
We find the White case distinguishable. As explained in White, "Congress wished to impose on lessee-carriers responsibility for the operation of leased vehicles `as if they were the owners of such vehicles.'" Id. 599 F.2d at 54. In the instant matter, plaintiff's allegations in the petition do not involve the allegations of negligent driving of the rig; but rather the negligent maintenance of the rig. Quality was put into exclusive possession, with full responsibility for operation of the rig by virtue of the lease. Further, by the design of the federal law Quality is solely responsible for the rig "as if it were the owner."
La. C.C. art. 2317 provides that "(w)e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Garde, a French concept, is defined in Louisiana law as the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others; the fault of a person thus liable is based upon one's failure to prevent the person or thing from causing unreasonable injury to others. Leaman v. Continental Casualty Co., et al., 00-0292 (La.App 4 Cir. 9/26/01) 798 So.2d 285, 289. As explained by the Louisiana Supreme Court,
..... whether the law imposes a duty of garde upon a party is a factual inquiry based upon the determination of (1) what benefit the party received from the thing, and (2) what kind of direction and control the party had over it.

Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991)
There is no dispute over which party had garde. The federal law, as well as the contract between the parties clearly shows that Quality had exclusive use and responsibility for the rig. Further, in brief to this Court, plaintiff states,
There is no dispute that Jermaine Rouselle granted Quality the use of this equipment for a specified period for use in the regulated transportation of property in exchange for compensation. Further, Quality had exclusive possession, control and use of Mr. Rouselle's equipment and had assumed complete responsibility for the equipment.
Plaintiff's argument is that the dispute arises from that portion of the contact which characterizes Mr. Rouselle as an "independent contractor."
Under Louisiana law "a contract is an agreement by two or more parties whereby *382 obligations are created, modified, or extinguished." La.C.C. art.1906. No further interpretation of the contract may be made in search of the parties' intent when the words of a contract are clear and explicit and lead to no absurd consequences. La. C.C. art.2046. Words in a contract are given their generally prevailing meaning, unless they are words of art or technical terms. Fonseca v. Pelican Pub. Co., Inc., 05-571 (La.App. 5 Cir. 1/31/06) 921 So.2d 1126.
Plaintiff argues the lease agreement refers to Rouselle as a independent contractor, making him not an employee of Quality, therefore subjecting him to a third party suit in tort not precluded by the exclusivity of the Workers' Compensation law. We believe this argument fails to take into account the factual circumstances of the case. Plaintiff, an employee of Quality was injured in the course and scope of his employment while working on a piece of equipment leased to Quality. In the lease agreement Quality had "exclusive possession, control and use of the equipment," and it assumed "complete responsibility for the operation of the equipment," meeting the requirement of garde under Louisiana law. The clear meaning of the relevant clause in the contract is to conform to the federal regulations putting Quality in possession of the rig "as if it were the owner," and giving Quality garde under Louisiana law.
Simply put, a Quality employee was injured while working on a piece of Quality Equipment, for which Quality assumed responsibility. Even assuming the rig had a fault which caused plaintiffs' injuries, the responsibility for that fault was assumed by Quality under the contract and by design of federal law. Accordingly, we find plaintiff has no remedy against a third party in tort.
For the forgoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Rouselle's insurer, Connecticut Indemnity Company, also filed a motion for summary judgment.